UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-cr-252 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| ERIC MARCEL TURNER, | |
| Defendant. | |

The Court held a four-day jury trial in this case from February 18, 2025 through February 21, 2025. The jury found Defendant, Eric Marcel Turner, guilty on Counts 1, 2, and 3 of the Indictment, which charged him with possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). A sentencing hearing is set for November 3, 2025. (*See* Dkt. No. 196.) This Order addresses several motions filed by the parties.

I.  **Defendant's First Motion to Strike Jury Venire Under the Sixth Amendment and Defendant's Pro Se Motion for Jury Expert Funding**

Shortly before the final pretrial conference, Mr. Turner filed a motion to strike the jury venire pursuant to the Sixth Amendment. (Dkt. No. 137.) Mr. Turner is Black, and only 1.6% of the jury venire was a member of that racial group. He argues that the venire was grossly disproportionate to the percentage of Black persons in the State of Minnesota and that the District of Minnesota's Jury Selection Plan systematically excludes Black jurors in the jury-selection process in violation of *Duren v. Missouri*, 439 U.S. 357 (1979). (*Id.*) At the pretrial conference, the Court explained that it would welcome further briefing on these issues following the trial if Mr. Turner was convicted. (*See* Dkt. No. 145 at 7.)

Following the jury's guilty verdict, Mr. Turner filed a motion seeking disclosure of the racial composition of the jury pool. (Dkt. No. 151 (citing *United States v. Erickson*, 999 F.3d 622, 627 (8th Cir. 2021)).) On April 8, 2025, the Court granted the motion for disclosure and entered a Protective Order, pursuant to 28 U.S.C. § 1867(f), regarding the handling of the information to be disclosed. (Dkt. Nos. 164–65.) The Clerk of Court provided reports on the operation of the Jury Selection Plan, information regarding the process for selecting juries in the District of Minnesota, and data concerning the proportionate number of names drawn from each county in selecting juries. (Dkt. No. 166 & Exs. A–C.)

Mr. Turner's motion to strike the jury venire has remained pending since the conclusion of the trial in February, but no additional briefing on the motion was filed by Mr. Turner or the government.[1] The Court set a September 12, 2025 deadline for Mr. Turner to submit all briefing on any of his pending motions, including the motion to strike the venire. (Dkt. No. 195 at 2 ¶ 1.) In addition, the Court gave the government until September 26, 2025 to submit a response to any supplemental briefing filed by Mr. Turner. (Dkt. No. 195 at 2 ¶ 2.) On September 5, 2025, Mr. Turner filed a Pro Se Motion for Jury Expert Funding in which he states that the information he received regarding the racial composition of the jury pool is complex, and he cannot adequately brief the issues presented in his motion to strike without the assistance of an expert. (Dkt. No. 199.) Therefore, he asks the Court to approve funding for a jury expert to successfully analyze the issues relating to the racial makeup of the jury pool and his motion to strike the jury venire. (*Id.*) The government has not filed any additional briefing.

---

[1] In July, Mr. Turner's counsel filed a motion to withdraw (Dkt. No. 193), and the Court held a hearing as required by *Faretta v. California*, 422 U.S. 806 (1975) on August 11, 2025 (Dkt. No. 197). The Court granted defense counsel's motion and appointed defense counsel to serve as standby counsel for Mr. Turner. Since August 19, 2025, Mr. Turner has been representing himself in this matter. (Dkt No. 195.)

All criminal defendants are entitled to a jury "selected from a fair cross section of the community." *Duren*, 439 U.S. at 359. After all, "the Sixth Amendment's promise of a jury of one's peers means a jury selected from a representative cross section of the entire community." *Ramos v. Louisiana*, 590 U.S. 83, 100 n.47 (2020) (citations omitted); *see also Taylor v. Louisiana*, 419 U.S. 522, 536 (1975) (explaining that the Sixth Amendment requires an "impartial jury drawn from a fair cross-section of the community"). However, "[t]he Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits the deliberate exclusion of an identifiable racial group from the juror selection process." *United States v. Burrage*, 75 F.4th 953, 957 (8th Cir. 2023) (quoting *United States v. Jefferson*, 725 F.3d 829, 835 (8th Cir. 2013)); *see also United States v. Nyah*, 35 F.4th 1100, 1107 (8th Cir. 2022) ("[T]he absence of black prospective jurors on the jury venire does not establish a Sixth Amendment violation.") (citation omitted).

To demonstrate that the makeup of the venire violates his Sixth Amendment rights, Mr. Turner must first make the following prima facie showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*United States v. Reed*, 972 F.3d 946, 953 (8th Cir. 2020) (quoting *Duren*, 439 U.S. at 364). To show that a group was systematically excluded from the jury-selection process, Mr. Turner "must provide . . . evidence in support of his claim, such as a defect in the jury selection process itself that serves to exclude the underrepresented group, that the . . . requirements [for inclusion in the pool] impose discriminatory qualifications on applicants, or that the administration of the juror

3

selection plan is discriminatory." *United States v. Erickson*, 999 F.3d 622, 627 (8th Cir. 2021) (cleaned up).

Though the information in the record points to a somewhat smaller percentage of potential Black jurors in the venire than there are Black persons in the community, the disparity is not so significant that it appears to be unfair or unreasonable. (*See* Dkt. No. 166.) However, even if the difference reflected in the record does suggest that the representation of Black persons in the venire is not fair and reasonable in relation to the number of Black persons in the community, Mr. Turner's claim would fail for other reasons.

First, the District of Minnesota not only uses voter registration rolls to draw its juries—a method approved of by the Eighth Circuit Court of Appeals, *see Erickson*, 999 F.3d at 627 (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996))—it also uses two other sources designed to improve the reach and inclusiveness of the jury pool. Specifically, the District of Minnesota uses lists of driver's license holders and state identification holders in addition to voter registration logs. These sources combined go well beyond the minimum approved by the Eighth Circuit. Further, there is nothing before the Court that suggests the District of Minnesota systematically excludes Black persons from the jury-selection process, nor that any intentional discrimination is responsible for any underrepresentation of Black persons from that process.

Accordingly, the Court finds that Mr. Turner has failed to establish a Sixth Amendment violation. And because there is no demonstration of systematic exclusion, the Court also denies Mr. Turner's request for jury expert funding: even if the statistical information could be read differently, Mr. Turner could not satisfy his burden.

## II.   Sufficiency of Notice of Sentencing Enhancement Under 21 U.S.C. § 851

Next, the parties dispute whether the government adhered to the law when seeking increased punishment based on a prior conviction under 21 U.S.C. § 851. To ensure that defendants

4

are aware that they may face a longer sentence based on a previous conviction, § 851 requires the government to state, in writing, the prior conviction that would serve as the basis for an enhancement. *See United States v. Curiale*, 390 F.3d 1075, 1076 (8th Cir. 2004) (explaining that the purpose of the notice under § 851 is to provide due process to the defendant). Specifically, § 851 provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, **the United States attorney files an information with the court** (and serves a copy of such information on the person or counsel for the person) **stating in writing the previous convictions to be relied upon**.

21 U.S.C. § 851(a)(1) (emphasis added).

Here, the parties' dispute concerns the fact that the government did not file a separate information regarding any § 851 enhancement. However, in the Indictment, the government included a Notice of Prior Conviction asserting that Mr. Turner is subject to a sentencing enhancement by virtue of his prior federal conviction in *United States v. Eric Marcel Turner*, No. 16-CR-192 (D.N.D.). The government argues that this notice in the Indictment is sufficient to comply with the requirements of § 851. (Dkt. No. 142.) Mr. Turner argues that the government's inclusion of the enhancement in the Indictment is insufficient because § 851 requires the notice to be set forth in an information and served upon the defendant and his counsel. (Dkt. No. 160.)

The Court finds that, even though the government did not identify the previous conviction to be relied upon in a separate information or other writing, Mr. Turner is nevertheless subject to increased punishment. This outcome is dictated by the Eighth Circuit's decision in *United States v. Johnson*, 462 F.3d 815, 823 (8th Cir. 2006). There, the court found that the government's inclusion in the indictment of an assertion that the defendant was subject to increased punishment

5

because of his prior convictions was sufficient. *Id.* ("Johnson's argument for reversal fails because the government's reliance on prior convictions was apparent from the face of the indictment, which listed the prior convictions on which the government relied and expressly cited to § 851.") (citation omitted). That is exactly what the government did here—the Indictment specifically references the prior conviction at issue, expressly cites § 851, and references the enhanced sentencing provisions of 21 U.S.C. § 841(b)(1)(B). Moreover, there is no suggestion in this case, nor could there be, that Mr. Turner was unaware that the government intended to rely upon his previous conviction from the District of North Dakota to seek increased punishment. Neither Mr. Turner nor his counsel have ever claimed that they weren't on notice of the government's invocation of § 851.

Therefore, the Court finds that Mr. Turner is subject to increased punishment based upon his previous North Dakota conviction for a serious drug felony. *See* 21 U.S.C. § 841(b)(1)(B); 21 U.S.C. § 802(58) (defining "serious drug felony").

**III.     Defendant's Motion for Judgment of Acquittal or in the Alternative for a New Trial**

Mr. Turner moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, or in the alternative, for a new trial under Fed. R. Crim. P. 33. (Dkt. No. 159.) "A district court has 'very limited latitude' when considering motions for acquittal." *United States v. Lemoine*, 104 F.4th 679, 684 (8th Cir. 2024) (quoting *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002)). In considering such a motion, courts do not reweigh the evidence or make credibility determinations, and they must "review the record in a light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences that support the jury's verdict." *Id.* (citation omitted). But a court has greater discretion when deciding whether to grant a motion for a new trial. *Id.* at 685–86. In that context, the court can weigh evidence, accept or reject witness testimony, and grant a new trial even if substantial evidence supports the verdict. *Id.* Ultimately, "the district court is allowed to grant a new trial if it is convinced that the

6

evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *Id.* (citation and internal marks omitted).

Mr. Turner argues: (1) the evidence presented by the government failed to demonstrate that he had any connection to the apartment where the fentanyl and the gun were found; and (2) specifically, with respect to Count 2 (charging possession of a firearm in furtherance of a drug trafficking crime), there was no evidence demonstrating a nexus between possession of a firearm and the drug crime. (Dkt. No. 159.) Having presided over the trial, heard the evidence presented by the government, considered Mr. Turner's cross-examination of government witness and his own presentation of his case, and applied the legal standards for a judgment of acquittal and a new trial, the Court denies Mr. Turner's motion. Viewed in the light most favorable to the verdict, there was ample evidence to support Mr. Turner's conviction on each Count in the Indictment, so his renewed Rule 29 motion is denied. And even allowing for the greater discretion in deciding whether to grant a new trial, the Court finds no basis to conclude that a miscarriage of justice may have occurred.

## IV.  Defendant's Pro Se Motion for Disclosure of Grand Jury Transcripts

Mr. Turner moves for disclosure of grand jury materials, including minutes of the proceedings and transcripts of grand jury witness testimony. (Dkt. No. 203.) Specifically, Mr. Turner requests the entire transcript and minutes of the grand jury relating to: (1) all witnesses who testified before the grand jury and whom the government intends to call as witnesses either at the suppression hearing or at the trial; and (2) all witnesses who testified before the grand jury whom the government does not anticipate calling as witnesses at trial because their grand jury testimony may be inconsistent with earlier statements they provided that are known to the

government.[2] (*Id.* at 1–2.) He argues that such disclosure is authorized under Federal Rule of Criminal Procedure 6(e). (*Id.* at 1.)

This motion is denied. Mr. Turner's motion presents no valid basis for these disclosures. There are no upcoming proceedings in this case—both the suppression hearing and the trial have already taken place—undermining the purpose for which Mr. Turner states he is seeking these grand jury materials. And Mr. Turner does not demonstrate any need for these materials at this stage.

## V.     Fourth Amendment Issues

Mr. Turner next brings several motions arguing that his Fourth Amendment rights were violated by the search of the apartment unit where law enforcement located the drugs and a firearm that formed the basis of the charges against him in this case. (Dkt. Nos. 200, 204, 205, 208, 209.) Prior to trial, Mr. Turner likewise raised his Fourth Amendment challenges in several motions. (Dkt. Nos. 38, 42, 52.) United States Magistrate Judge John F. Docherty held pretrial hearings on those motions (*see* Dkt. Nos. 49, 58), and following the hearings, Mr. Turner submitted additional briefing (Dkt. Nos. 62, 66). In a Report and Recommendation ("R&R") dated August 19, 2024, Judge Docherty recommended that the motions to suppress evidence be denied. (Dkt. No. 67.) Mr. Turner filed objections and still more additional briefing regarding the issues covered in the R&R. (Dkt. Nos. 69, 70, 72, 75.) Mr. Turner's appointed counsel filed an additional motion to suppress and an objection to the R&R. (Dkt. Nos. 87, 89.) The undersigned held a further evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). (Dkt. Nos. 97, 98, 102.) Following that hearing, the Court issued an Order accepting the R&R and denying Mr. Turner's motions to suppress. (Dkt. No. 126.)

---

[2] Mr. Turner also requests any recorded statements from this second category of grand jury witnesses.

The issues Mr. Turner presents in the currently pending post-trial motions have already been raised repeatedly, heard, and decided. Having reviewed his pending motions, the Court finds no basis to reconsider its previous determination of the Fourth Amendment issues in this case. Mr. Turner clearly disagrees with the Court's resolution of those issues, and he retains the right to appeal the Court's decisions. But seeking yet another bite at the apple before this Court is not proper or justified at this stage.

### ORDER

Consistent with the foregoing, **IT IS HEREBY ORDERED THAT**:

1. Defendant's First Motion to Strike Jury Venire Under the Sixth Amendment **(Dkt. No. 137)**, and Defendant's Pro Se Motion for Jury Expert Funding **(Dkt. No. 199)** are **DENIED**.

2. The government provided sufficient notice of the sentencing enhancement sought under 21 U.S.C. § 851.

3. Defendant's Motion for Judgment of Acquittal or in the Alternative for a New Trial **(Dkt. No. 159)** is **DENIED**.

4. Defendant's Pro Se Motion for Disclosure of Grand Jury Transcripts **(Dkt. No. 203)** is **DENIED**.

5. The Fourth Amendment challenges raised in Defendant's Pro Se Letter to District Judge **(Dkt. No. 200)**, Defendant's Pro Se Motion to Suppress All April 17, 2023 Search Warrants **(Dkt. No. 204)**, Defendant's Pro Se Motion to Omit the Paragraphs Relating to the Identification of Xavier Thomas **(Dkt. No. 205)**, Defendant's Pro Se Motion for Judicial Estoppel **(Dkt. No. 208)**, and Pro Se Motion to Suppress **(Dkt. No. 209)** are **DENIED**.

Date: September 29, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge